Good morning. May it please the Court. My name is Joseph Solman. I represent the tight-dip appellant, Deanne Casey. I'm here today appealing the dismissal of two claims by the District Court. The first claim being a Bivens claim, dismissed on a motion to dismiss. The second claim being a Title VII claim, dismissed at summary judgment. I'll talk about the Bivens claim first. My client alleged a Bivens claim against several federal officials arising out of her removal from an Air Force base in Hanscom when she complained to, made a report to the police about a possible assault on her. The District Court dismissed that based on the incorrect theory that the Contract Disputes Act applied to her claim. I think we've explained in our brief very clearly that the Contract Disputes Act does not apply to her claim for several reasons. First and most, I think clearly, the Contract Disputes Act only applies to claims between contractors and the government. She's an employee of a contractor and the Contract Disputes Act, or the CDA as I'll call it, specifically defines contractor not to include individuals. Also doesn't include subcontractors. The case law is quite clear that an individual cannot bring a claim under the CDA against the government. Counsel, that may be so, but of course our review was de novo, and I'm struggling with the notion that your complaint states a claim under the Bivens doctrine. You follow me? You allege in the applicable statement of claim in your complaint, you allege that the unconstitutional action of which you complain is the termination of your client's employment in retaliation for her exercise of her First Amendment right, that is, her filing of a police report. That's your allegation? Under our account, Your Honor, we allege that the wrong was her termination, but we also allege that her termination was an unconstitutional act. That's not literally under the count, but it's in the complaint. It's not under the count, and the only defendant that you have in the case, Colonel Glenn, is not alleged to have had anything to do with her termination. Well we do allege that Colonel Glenn removed her from the base, brought her from the base and caused her to be removed, which led to her termination. But we also explain that, as is often the case with pleadings, we pled based on our good faith investigation against who we thought were the wrongdoers at the time, but through discovery, we found out who really ordered her removal from the base, and if the court would allow it to be remanded, we plead it and allege the count against Judith Hall. Except that you never asked the district court for that relief. Well, we didn't because we were dismissed under the CDA. I know, but you could have asked the district court, based on what you learned in discovery, to allow you to re-plead that count. I mean, it's a staple of our jurisprudence that this court doesn't grant relief that was never requested in the district court. It's just not the way the system works. Well, the decision that I'm appealing is the decision dismissing the original complaint. That's right, and that decision has got to stand or fall on whether you state a Bivens claim against Colonel Glenn. Well I think there's a fair allegation that I state a Bivens claim against him. I think it's also fair from the reading of the complaint that there's an allegation of a Bivens claim against another federal official. But that federal official is not a defendant in the case. We can't give you relief on that. I think the court can remand, reverse, based on the incorrect ruling that the CDA applied, which it does not apply. But we don't review the district court's reasoning. We review the judgment, and the whole purpose and function of de novo review means that we aren't bound by the district court's reasoning. We look at the case fresh, and we decide if the count was properly dismissed, even if it was dismissed for the wrong reason, should it have been dismissed based on what was before the district court at the time. So this other official just doesn't factor into the equation. Well I guess I didn't, because the claim was dismissed by a separate judge that it was no longer before, I didn't seek to have it repled because the claim was dismissed. But that's water under the bridge. Okay, well, I continue to push this court on my position to allow me to replead, to reverse on the district court's reasoning, and replead that claim against Judith Hall. I will continue with my, the CDA also doesn't apply though because the source of the rights is not contractual. The source of the rights is the right to petition the government for the redress of grievances. The CDA doesn't apply for that reason either. And we also explain that to the judge, and the judge incorrectly again found that the CDA applied. Moving on to the Title VII case. Just before you do that, why isn't the opportunity to seek redress through the executive agency or through the state law cause of action a sufficient alternative remedy, making there be no need to say that a Bivens action has to be created here? Well, the executive order doesn't apply to, it specifically applies to discrimination. Which we have a theory here, that the First Amendment, that the report to the police was a protected activity under the discrimination laws. That's certainly not a theory that a jury or a court might accept. It's also a First Amendment right to report to the police. The executive order doesn't apply to the right to free speech, it specifically applies to Is there a requirement that there be a specific match like that in deciding whether to recognize a constitutional cause of action? It doesn't have to be a specific match, but it has to encompass the right at issue. The right at issue is not the right to report crimes to police, it's not the right to petition the government. It's the right to be free of discrimination and the right to complain about discrimination. Here this is about an assault by someone who happens to be a man to a woman, and it could be that the court doesn't, or a jury doesn't believe that that was a gender based assault, but simply an assault. So it's really a whole separate right that is being alleged. Regarding the state court remedy, the state court remedy was against the contractor. And again, that was settled, there's no, it's not clear, it was a remedy under Title 7 again, and also 151B, but it was settled, there's no adjudication, it's not clear at all based on the settlement whether my client could successfully avail herself of that. I think even under the government's theory and the government's arguments, the contractor would have a defense by saying that it was required to do what it did by the government. And there's a case law, as I've cited in my brief, where a contractor can defend itself on action that it's been required to do, defend itself against liability, against a claim when it's being forced to do something by the government. Moving on to the Title 7 issue, that was a summary judgment, and we think the district court erred there by engaging in fact finding and weighing the facts rather than simply assessing whether or not there were factual disputes there, whether or not there were fair inferences that could weigh on either side. The precedent is clear that all factual disputes and competing inferences go to the jury, and that question of whether an employment relationship exists is fact-intensive and needs to be assessed. Although there are certain factors to consider, it's a totality of the circumstances. Didn't you agree or concede that she was not an employee of HHS? I don't believe we conceded that. We conceded that she didn't believe she was an employee of HHS, but we didn't concede that, we're arguing that she is an employee under the EEOC standards. What was your theory of her employment? She didn't have any of the indicia of an employee, she wasn't controlled by them, she wasn't paid by them, she wasn't supervised by HHS, what's the theory of employment? Well we think she had a continuing relationship with HHS through several contractors. So there were contractors that she worked for who supervised her, and isn't it correct that the record does not show that HHS designed the programs, they were designed by the contractors? HHS designed the programs in conjunction with the contractors. They had a contract with the contractors and the contractors with the Air Force Materiel Command, and they designed the programs as well. The standards that she was measured by were standards developed by Federal Occupational Health, a division of HHS. She was supervised by another contractor but whose job was solely to supervise this HHS program, Jesse Burke. Broadly, among several different bases as I understand it. That's correct, but it's the same exact program. She's also, another reason that it's, important reason is she's in the business of what HHS does. HHS, or FOH specifically, is in the business of providing occupational health services to... Through contractors who design the programs, and they have a contract. She works for the contractor. How does she become an HHS employee? She's doing their business. I think it's, I would analogize it to, I know, I believe the, there's case law, the Federal Express drivers, cases have been coming up to this court where delivery driver, delivery companies are alleging that they're not in the delivery service. They're trying to keep their drivers as couriers. Those are cases, as are many of the cases and criteria cited in your brief, where the issue is, is whether an individual is an independent contractor or someone's employee. Your client, by her own admission, is an employee. So the question is, an employee of who? And it seems to me that on your theory, right, any time a person delegates work to independent contractors, those independent contractors are going to be, their employees, on your theory, could claim to be employees of the, of the person whose project it is. I respectfully disagree, Your Honor. I think this case is distinguishable from the cases cited by my sister because in those cases, the, the employees of the contractors were doing discrete projects. They weren't doing the business of the government. There's the, there's the case of Sybald where the employee was in a short-term position providing administrative assistance services to the Navy. There's a case of Palmer where somebody was assistant administrator for IBM, which contracted with Homeland Security. These are people who are doing discrete tasks. I mean, a computer person is not somebody you would think of as a Homeland Security expert. Ms. Casey was doing health-based work. She was a, she was a health promotions coordinator. She was doing the work of, that HHS provided to these other agencies. She was doing, so it doesn't matter how many levels of contractors HHS has, a subcontractor of a subcontractor of a subcontractor of a contractor, all of those people, as long as they're doing health-based services, are going to be regarded as employees of HHS. That's your theory. No, that's my, my argument is that's one indicia of the employment here. The other indicia is that she was a long-term employee there. She wasn't paid per a set job or a project. She was paid an ongoing salary. Who was she paid by? Her salary, her pay came from the contractor. But it was in, it was specified in the contract between HHS and, and the contractor. What was specified? The amount of her pay? The amount of her pay was specified in the contract. She was also, the fact that she had a continual relationship. These aren't my standards, by the way. Of course, these are the standards from the EEOC and from this court's decision in Barton. Yeah, but again, those are standards to be used to, to determine whether someone's an independent contractor or an employee. They're not necessarily standards that apply when we're determining. You're taking a person who's on the payroll of and, and admits she's an employee of one party, and you're trying to argue that she is now either alternatively or also an employee of another party. Yes, and I don't, I think those factors are, those are the same factors this court applied in the Lopez case, where the, where the plaintiffs were arguing that they're employees of the state, of the state human resources division, as well as of the municipal departments. So I don't think it's a, it's a, I think that those, those factors apply in both instances, Your Honor. And with that, I'll rest my briefs. Thank you very much. May it please the Court. With respect to deciding whether to extend Bivens to this First Amendment claim, I ask the Court to consider special factors. Ms. Casey was removed from Hanscom Air Force Base, where she was a nurse conducting fitness programs, due to the concerns of Air Force personnel that she had deteriorated so much in recent weeks that she could be a security concern on the base. It was a time where they'd had violence on the base, particularly with respect to civilians, and that the Air Force was extremely concerned about protecting everyone who worked there. The, there is a Supreme Court case... Counsel, counsel, I'm a little puzzled. I'm puzzled by where you're starting. So does the government concede that on its face, this complaint states a Bivens claim against Colonel Glenn? No, Your Honor, certainly not. Well, is that logically the place to start? Your Honor, I thought that your questions regarding Colonel Glenn were so very much on point that... Okay, so you've got nothing to add on that issue? I do not, Your Honor. Okay. You know that ICBA requires that the complaint state what the violation is, what the constitutional provision is, and whether the individual engaged in personal conduct that violated the Constitution because of the exercise of First Amendment rights. And ICBA made very clear that the Supreme Court has never extended Bivens' actions to First Amendment claims. And we have here a huge jump being asked of Your Honors to extend it. Of course, this isn't, this isn't a garden variety First Amendment claim. As your brother describes it, this is a right to petition claim. That's a very narrow subset of First Amendment claims and may be entitled to some sort of different treatment. It doesn't present the same broad dangers as extending Bivens' general First Amendment claims. I think the Supreme Court has consistently been hesitant to extend Bivens' to any First Amendment claims. But the Supreme Court has never considered even, or even commented upon in dicta on right to petition claims in the Bivens' context. That is correct, Your Honor. I would also point out that the First Circuit has never extended Bivens' into any First Amendment claims. And this certainly would not be the case for the reasons that Your Honor's questions suggested. That there's nothing in this, there were numerous defendants originally, all of which were voluntarily dismissed except for Colonel Glenn, and there is nothing alleging that he was personally responsible and his personal conduct was involved in terminating Casey's employment because she made a report to the police. And those are requirements for alleging Bivens' claims. So for that reason alone, this is not a case to extend and create a new Bivens remedy. Would there be any other place, a way that she could get her rights heard short of a Bivens' claim? She's not a contractor. What basis would she have to get her claim heard where she would get some consideration for it short of a Bivens' claim? Your Honor, she does have a clear remedy, which she has already successfully exercised. And that is the remedy against STG, her contractor. And she, as I say, did receive monetary damages from STG. The question my brother asks is whether she should also be able to seek damages, not other relief, but monetary damages against the United States, well, against HHS, which is the creator of this fitness program in federal agencies. And we're not sure about that, Your Honor, basically. As my brief says, there are two possible alternatives. But remember here that the government did not terminate her. She alleges termination, but she was not a government employee. And all that happened here was that her security credentials were removed so that she could not any longer be employed at Hanscom. But the practical effect of that, since the contractor had no other place for her, was that she was terminated. So that what caused her termination, at least that's her argument, is when the government ordered her, when the Air Force ordered her removed from the base. Yes, Your Honor, that's a good point. There is no, nothing in the evidence regarding the absence of other positions available through this subcontractor. The subcontractor, when she was fired, told her she could not return to Hanscom and, quote, we have no other positions available in the state of Massachusetts, end quote. Whether or not there were other positions available is not in evidence. But, Your Honor, I love the statement of the contractor. It was. It was, Your Honor. It is what the contractor told her. There is, as you know, a Supreme Court case very much on all fours with respect to removal of security access, and that is Cafeteria and Restaurant Workers Union, where a civilian cook employed by the government on a closed military base, as is Hanscom. It's not an open base, Your Honor. High security there. Had her base access pass removed and her security clearance removed. And she sued under Bivens for a loss of her job. And, Your Honor, there the court declined to review the revocation of her security credentials in any way, holding that security decisions were purely within the discretion of the military. Moving on to Title VII, I believe that Your Honor's questions regarding whether she was a contract employee or a federal employee were very much on point. This is a program run by HHS to provide basically fitness centers for employees in federal agencies around the country. HHS does not actually operate those centers. It has overall performance standards. It provides arrangements by contracting with Millennium, and Millennium has contracted with a subcontractor to obtain personnel and to supervise those personnel. There is no question that HHS has a role here and is very concerned that these fitness programs work well because it's government money, Your Honor. But HHS has had no direct contact with Casey at any point. My brother's brief seems to say that Casey's immediate supervisor was an HHS employee. The name of that individual was Jesse Burke. But my brother is incorrect in that regard. Jesse Burke was an employee of Millennium who is a contractor to HHS on these fitness programs. She is paid by the contractor. She develops class activities, for example, at Hanscom, what these fitness programs should be involved with. She gave quotas to Ms. Casey regarding how many cardio risk tests she was required to do. She was asked what tests she should conduct. She got reports. She imposed quotas on Casey regarding how many civilian employees she served, et cetera, et cetera. So Jesse Burke was very involved in supervising Casey, but she was definitely not an HHS employee. Yeah, but that misses the point that I think your brother is trying to make because citing Halpert, the Second Circuit case, his allegation is that Burke was acting as an agent of HHS and therefore her actions are imputable to HHS. That's his allegation. That's the allegation you've got to meet. Yes, Your Honor. Why is that so? Well, anyone who works for a program that's funded by the United States government, we hope, is in some sense an agent of the United States government. The program has been funded by Congress. The outlines of... So wait a minute. In some sense, so you're saying that Burke is, at least in some sense, an agent of the government? She is not an employee of the government, Your Honor. No one's talking about an employee now. But the question here, if she's an agent of the government and her actions are imputable to the government, then this is a different case than the case you've been arguing. Certainly, Your Honor. And you're taking the term agent in a very specific way. She was not an agent. She was not an employee of the government, but she was a contract employee who operated the program. She had a role in the government. My brother says that because she had responsibility for carrying out the fitness program, that she was de facto an agent, that he uses that term. I don't use that term at all in the government's briefs. If she were, if Jessie Burke, the supervisor, were an employee of the government, virtually all contract employers, as you point out, would be, quote, agents of the government. So what if we decide that it can't be determined on the state of the record whether Casey is an employee or, taking a different posture, what if we decide that you're wrong and that she is an employee? What then? Your Honor, I think what's before you is whether the matter could have been decided on summary judgment. And the district court concluded that overwhelmingly Casey was not an employee, but was an employee. Okay, so my question actually goes to the exhaustion argument. Yes, Your Honor. Thank you. There is, as Your Honor's know, a requirement under Title VII that someone who has a complaint about discrimination bring that complaint to the attention of an EEO employee, an EEO counselor within 45 days of the incident. That would have required Casey to report to an EEO counselor in December 2011. And as a matter of fact, she missed that deadline and it took her 97 days to report to an EEO counselor. In fact, she didn't initiate contact with an EEO counselor until after she filed suit. She says that some form of equitable tolling should apply because although she knew about Title VII rights and that they applied to employees, she didn't know that she was an employee at the time. Your Honor, I think that argument is belied by the charge that she filed before the state Commission Against Discrimination, the MCAD. Her charge said there that she was an employee of STG and she had been discriminated against and she wanted the MCAD to apply discrimination laws here. And then she goes on to say at the end of this charge that there are additional respondents and she lists federal agencies. She lists HHS, DOD, and the Air Force and she says that they violated Title VII of the Civil Rights Act. That is, at the time she filed her MCAD charge, she was aware of the possibility that she had a claim against these federal agencies, all of them, and that the Title VII of the Civil Rights Act applied. So I don't think she can say she was unaware of her rights. Moreover, she was represented at that time, Your Honor, so she had every ability to ascertain the legalities. Thank you.